Bruce R. RIPPEY and A. Gordon Rippey,
Plaintiffs,

v.

DENVER UNITED STATES NATIONAL
BANK, a national banking association,
Helen Bonfils Davis, and the Denver
Post, Inc., a Colorado corporation, De-
fendants.

Civ. A. No. 66–C–359.

United States District Court
D. Colorado.

July 3, 1967.

See also, D.C., 260 F.Supp. 704.

Dawson, Nagel, Sherman & Howard, Winner, Berge, Martin & Camfield, Denver, Colo., for plaintiffs.

Davis, Graham & Stubbs, and Akolt, Shepherd & Dick, Denver, Colo., for defendant Denver United States National Bank.

Holland & Hart, Denver, Colo., for defendants Helen Bonfils Davis and The Denver Post, Inc.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, Judge.

Defendants have again moved, under Rule 19, Federal Rules of Civil Procedure, to dismiss this diversity action for failure to join "indispensable" parties. We have previously denied an identical motion, Rippey v. Denver United States National Bank, D.Colo.1966, 260 F.Supp. 704, but the defendants now assert that discovery has revealed certain facts, and that certain developments have transpired in a related state court action, which compel dismissal at this juncture.

The new circumstances relied upon by the defendants are: 1) that the life income beneficiary, Helen Crabbs Rippey, is the real party in interest as evidenced by the fact that she has become obligated to pay, and has paid, the legal fees and expenses resulting from this lawsuit, and 2) that an Order of the Probate Court in and for the County of Denver, Colorado, dated April 13, 1967, has removed the threat to Helen Crabbs Rippey's participation by holding that the Tammen Will Forfeiture Clause does not bar the beneficiaries from challenging the acts of the trustee here in dispute. It is argued by defendants that the factor of a threat to enforce the forfeiture clause was an important equitable factor in our decision to retain jurisdiction.

The questions presented are: *first,* whether we are permitted to consider factors which may have arisen since our earlier Order, supra, was entered; and *second,* in the event that we may, whether the considerations now asserted compel a different result.

Plaintiffs refer to the statement found in some cases that jurisdiction depends upon the state of things at the time the action is brought; that once having vested, it cannot be ousted by subsequent events.[1] They contend that the changed circumstances relating to the question of Mrs. Rippey's indispensability are therefore irrelevant at this juncture, and may not be considered. We disagree.

This principle of non-divestiture is, of course, a well-established generalization which properly preserves federal jurisdiction in many instances. Nevertheless, jurisdiction is sometimes lost because of after-occurring events, and care must be used not to apply the

---

1. E.G., Mullen v. Terrance, 9 Wheat. 537, 6 L.Ed. 154 (1824); Clarke v. Mathewson, 12 Pet. 164, 9 L.Ed. 1041 (1838); Phelps v. Oaks, 117 U.S. 236, 6 S.Ct. 714, 29 L.Ed. 888 (1886); St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Brown v. Eastern States Corp., 4 Cir. 1950, 181 F.2d 26, cert. denied 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631; City and County of Denver v. Denver Tramway Corp., 10 Cir. 1951, 187 F.2d 410; Spector Motor Service v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951); Reisman v. New Hampshire Fire Ins. Co., 5 Cir. 1963, 312 F.2d 17; Leavitt v. Scott, 10 Cir. 1964, 338 F.2d 749; 36 C.J.S. Federal Courts § 26; 1 Barron & Holtzoff, Federal Practice § 21.

rule in an automatic or sweeping manner.[2]

Noteworthy here, are cases which involve the question of indispensable parties. These provide a number of examples where federal jurisdiction was lost because of events occurring subsequent to the commencement of the action. E. g., Lawrence v. Southern Pac. Co., E.D. N.Y.1910, 177 F. 547; Fryer v. Weakley, 8 Cir. 1919, 261 F. 509; Charleston Nat. Bank of Charleston, W. Va. v. Oberreich, D.C., 34 F.Supp. 329; Kentucky National Gas Corp. v. Duggins, 6 Cir. 1948, 165 F.2d 1011; Curtis v. American Book Co., D.C.N.Y.1956, 137 F.Supp. 950; Annot. 134 A.L.R. 335, 351–54.

In Grady v. Irvine, 4 Cir. 1958, 254 F. 2d 224, cert. denied 358 U.S. 819, 79 S.Ct. 30, 3 L.Ed.2d 60 (1958), the plaintiff in a diversity action for personal injury died as a result of the injuries sustained during the pendency of the action. Counsel for the plaintiff then filed a motion to substitute, as plaintiff, a duly appointed administrator c. t. a. of the same citizenship as the defendant. The court noted that in the usual case a substitution of this nature would not divest federal jurisdiction. However, the Virginia wrongful death statute did not give rise to a right of action for wrongful death during the life of the decedent, nor did such right of action survive his death. Hence, the nature of the action was different in the hands of the administrator and the question of his citizenship became important.

"There is great difference, however, between a formal substitution of a personal representative to prosecute the action in aid of the same right asserted by his decedent and an amendment or supplemental bill which changes the nature of the right asserted and alters the substance of the action. In the latter instance, jurisdiction should be re-examined in the light of the citizenship of all of the indispensable parties including those introduced upon allowance of the new pleading. See 4 Moore's Federal Practice, 2nd Ed., 25.05. *It is analogous to the rule which calls for a re-examination of the diversity requirement after the joinder of an indispensable party.* [Citing cases]" 254 F.2d at 226. [Emphasis supplied]

■■■ One explanation advanced for this result is that when an indispensable party is not present, the federal court is devoid of jurisdiction, so that when such parties are ordered to be joined there is no federal jurisdiction to "divest." Schlesinger & Strasburger, "Divestment of Federal Jurisdiction: A Trapdoor Section in the Judicial Code," 39 Colum. Law Review 595, 608 (1939); Annot. 134 A.L.R. 335, 351. This may explain why many courts disregard the "once jurisdiction, always jurisdiction" rule when it becomes necessary to join one who has become indispensable to the proceedings. However, it conveys the erroneous thought that the indispensability question is jurisdictional. In truth, it is not, nor has it ever been, jurisdictional, in the technical sense of that term. See Reed, Compulsory Joinder of Parties in Civil Actions," 55 Mich.Law Review 327, 332–34 (1957); Elmendorf v. Taylor, 10 Wheat. 152, 23 U.S. 152, 156, 6 L.Ed. 289 (1825); Dyer v. Stauffer, 6 Cir. 1927, 19 F.2d 922. The fram-

2. Professor Moore has made this observation in discussing cases where jurisdiction is divested by the intervention of parties lacking diversity of citizenship.
   "It should be noted, however, that the statement found in some cases that where the federal court has once acquired jurisdiction in a diversity case, intervention of parties lacking diversity will not destroy jurisdiction, is too broad and in effect begs the question. The statement is true only where intervention can be regarded as ancillary to the main action or where a class action is involved." 4 Moore's Federal Practice ¶ 24.18, pp. 137–38.
   See also Texas Transportation Co. v. Seeligson, 122 U.S. 519, 7 S.Ct. 1261, 30 L.Ed. 1150 (1887) (divestiture in removal cases).

ers of the new Rule 19, Federal Rules of Civil Procedure, specifically emphasize that the Rule calls for determining whether the court *ought* to proceed without the absent party, not whether it has jurisdiction to proceed against those who are present. Advisory Committee's Note to Rule 19, 39 F.R.D. 89 (1965). Of course, this latter distinction often is not made, since a dismissal under Rule 19 has the same practical effect as a dismissal on jurisdictional grounds. It is important here, however, in view of the plaintiffs' assertion that we are now precluded from further consideration of jurisdictional facts.

█ Rule 19 requires the court to decide, "in equity and good conscience," whether or not to proceed in the absence of certain parties. It would be anomalous to say that a material change in the equities during the proceedings cannot be considered. Indeed, courts have given consideration to such changes in cases arising under the old Rule 19. E. g., Blizzard v. Penley, D. Colo.1960, 186 F.Supp. 746; Grant County Dep. Bank v. McCampbell, 6 Cir. 1952, 194 F.2d 469, 31 A.L.R.2d 909. Equity acts in the present. A court which undertakes to do equity cannot suddenly become deaf to new developments which may bear upon its original purpose. 30A C.J.S. Equity § 600; Meredith v. Ramsdell, 152 Colo. 548, 384 P.2d 941 (1963). The threat to the Colorado beneficiaries presented by the Tammen Will forfeiture clause was a factor in our previous decision to proceed in their absence. Rippey v. Denver United States National Bank, supra, 260 F.Supp. at 711. This threat has now been removed, and a reconsideration of the equities is warranted.

█ Most of the relevant factors remain the same, and it is not necessary to repeat our earlier comments in detail. In summary, however, we emphasized that the relief sought was for the benefit of all the beneficiaries; that the absent beneficiaries were not seeking to participate; that the forfeiture clause posed "a hazard which is not easy for a beneficiary to face," either here or in the state courts; that the plaintiffs were exercising an important constitutional right in selecting a federal forum; that the potential harm to the defendants from multiple suits was reduced by the principles of trust law permitting expenses of groundless suits to be charged to the guilty beneficiary, and providing reimbursement to the trustee for the cost of defending attacks against the trust; and that multiple litigation would not deplete the trust corpus in view of the alleged agreement of indemnity between the Bank and Helen Bonfils Davis under which the latter is to hold the Bank harmless from any and all expense, including the expenses of litigation.

Thus, it can be seen that the forfeiture clause was but one of a number of factors, albeit an important one, favoring retention of the case without the absent beneficiaries. We do not feel that the scales are now tipped on the opposite side because the threat of forfeiture has been eliminated. A countervailing factor is that the pretrial proceedings have been nearly completed and the case has been set down for trial. Considerable expense has been incurred by both sides since we first considered the problem, and this weighs in favor of continuing the proceedings. This is especially relevant in a case such as this where the pretrial effort has been so extensive. At this juncture, the trial, in terms of cost to the litigants, will likely be minor by comparison.

The defendant Bank has repeated its concern about multiple litigation. The assertion is that the absent beneficiaries, particularly Helen Crabbs Rippey, are merely awaiting the outcome of this case and will commence a second action in the state courts if the result here is unfavorable to them. As we have previously noted, the trust laws and the in-

**320**

demnity agreement appear to provide ample protection should this occur.

It is also contended by the Bank that Mrs. Rippey is in effective control of the litigation. If this is true, Mrs. Rippey, although not a named party, would be hard put to establish that she is not bound by a judgment entered. Restatement of Judgments § 84; Souffront v. LaCompagnie des Sucreries, 217 U.S. 475, 486–487, 30 S.Ct. 608, 54 L.Ed. 846 (1910). We do not undertake to forecast the view which the state courts might take. We merely point out what the law is in such circumstances.

We conclude that the changes do not result in Mrs. Rippey's becoming an "indispensable" party. We do not believe the equities have materially changed, and it is therefore,

Ordered that the defendants' motion to dismiss be, and the same hereby is, denied.

